UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ROBERT GEORGE,

Plaintiff

C.A. No. 07-466-S

v.

GEICO General Insurance Company,

Defendant

**PLAINTIFF'S MEMORANDUM OF LAW SUPPORTING HIS OBJECTION TO MOTION OF DEFENDANT, GEICO GENERAL INSURANCE COMPANY, TO "SEVER AND STAY"**

Plaintiff, Robert George ("Robert" or "Plaintiff"), has objected to the motion of defendant, GEICO General Insurance Company ("GEICO") to "sever and stay" Count II of his Complaint.[1] Robert offers argument in support of his objection to GEICO's motion in this memorandum.

**FACTUAL BACKGROUND**

Plaintiff is a resident of Providence, Rhode Island, and was involved in a motor vehicle accident on January 14, 2007 in a private parking lot in Warwick with another vehicle.

---

[1] The Complaint has subsequently been amended but the reference to GEICO's bad faith is reasserted. Count II of the Amended Complaint retains the same allegations of "bad faith" as were alleged in Plaintiff's initial pleading.

[2] Chief Judge Lisi's decision in Condor v. GEICO General Insurance Company, Summit Insurance Company and New London County Mutual Insurance Company, U.S.D.C.-R.I. C.A. File No.: 07-460ML (Document Number 33,

As a result of this accident, Plaintiff's motor vehicle was damaged. Robert was also thrown about, suffering injuries to his person. He has sought extensive medical treatment and he is unable to carry on and conduct his normal daily activities as a result of this accident.

At the time of the accident, AIG Insurance had issued an automobile liability insurance policy to Reese, that was in full force and effect, and which provided bodily injury liability coverage with applicable limits of twenty-five thousand ($25,000) dollars ("the AIG policy").

Also at the time of the accident, GEICO had issued an automobile insurance policy to Cheleasa Bergeron (Robert's mother), that was in full force and effect, and provided underinsured motorist ("UIM") coverage to Robert with applicable limits of fifty thousand ($50,000) dollars and medical payment benefits in the amount of ten thousand ($10,000) dollars ("the GEICO policy").

On or about May 4, 2007, plaintiff filed suit against Moore and Reese in the Providence County Superior Court. That case settled shortly after the filing of this action.

By letter dated February 19, 2007, GEICO stated that it had determined that liability for the accident of January 14, 2007 rested solely with Amanda Moore and Deborah Reese. At the time of the motor vehicle accident of January 14, 2007, plaintiff was a nineteen (19) year old young man in excellent health with no history of medical treatment for his back or neck. By letter dated February 27, 2007, plaintiff forwarded copies of MRI reports of his cervical and lumbar spines dated February 23, 2007 to GEICO. The cervical MRI report described a disc desiccation at C4-5 with bulge and spurring, and disc bulges at C5-6 and C6-7. The lumbar MRI report described an L5-S1 disc desiccation with herniation. By letter to plaintiff dated April 17, 2007, GEICO stated, "[i]f and when you receive a policy limit settlement offer from the tortfeasor's insurer that is less that our insured's UIM limit, please notify us immediately before

accepting that offer, so we can give proper consideration to your claim for underinsured motorist benefits."

Contrary to this false and misleading assertion, Rhode Island law permits recovery of UIM benefits when the available UIM limits are equal to or exceed a tortfeasor's bodily injury liability limits and where, as here, the insured's damages also exceed the tortfeasor's limits. Rhode Island law does not require that an insured make a claim or bring an action against an underinsured tortfeasor as a prerequisite to recovering UIM benefits. As an insurance company authorized to do business in the State of Rhode Island, GEICO knew, or should have known, that Rhode Island law permits recovery of UIM benefits when the available limits are equal to or exceed a tortfeasor's bodily injury liability limits and that Rhode Island law does not require that an insured make a claim or bring an action against an underinsured tortfeasor as a prerequisite to recovery from his own insurer pursuant to Rhode Island General Laws § 27-7-2.1(h).

In a letter dated April 21, 2007, plaintiff, through counsel, reminded GEICO that Rhode Island law does not require that an insured make a claim against or bring an action against an underinsured tortfeasor as a prerequisite to recovery from his own insurer. In another letter dated April 21, 2007, plaintiff made a written offer to settle his claims in an amount equal to or less than the UIM coverage limits in force at the time his claims accrued. Nevertheless, Plaintiff's first written offer has been and is presumed to be rejected by GEICO because GEICO never provided a response to plaintiff's offer in contravention of defendant's duty to participate in settlement negotiations pursuant to *Skaling v. Aetna*, 799 A.2d 997 (R.I. 2002).

In another letter dated April 26, 2007, plaintiff made a second written offer to settle his claims in an amount equal to or less than the UIM coverage limits in force at the time his claims accrued. Plaintiff's second written offer has been and is presumed to be rejected by GEICO

because GEICO never provided a response to plaintiff's offer. On July 5, 2007 GEICO inquired as to whether plaintiff had a MRI, despite the fact that plaintiff had sent copies of his MRI reports to GEICO on February 27, 2007. In response, plaintiff forwarded a second copy of the reports to GEICO. On July 5, 2007, GIECO restated its position that it was under no obligation to consider plaintiff's claim because plaintiff had not settled with the tortfeasors despite the fact that plaintiff had advised GEICO of Rhode Island law by letter dated April 21, 2007.

By email dated July 5, 2007, plaintiff attached a copy of the Rhode Island General Laws § 27-7-2.1, calling attention to subsection (h). By letter dated July 26, 2007, plaintiff made a third written offer to settle his claims in an amount equal to or less than the UIM coverage limits in force at the time his claims accrued. Plaintiff's third written offer has been and is presumed to be rejected by GEICO because GEICO again did not provide a response to plaintiff's offer. On September 28, 2007, plaintiff contacted GEICO by email to inquire as to the status of this claim but never received a response from GEICO. Then on October 12, 2007, plaintiff, through counsel, spoke with a GEICO representative who <u>for the third time</u> stated that GEICO could not consider plaintiff's claim until Robert had settled his claim against the tortfeasors. In response thereto, GEICO was sent <u>yet another</u> copy of the relevant Rhode Island statute.

By letter dated October 12, 2007, GEICO informed plaintiff that it was placing him on notice of its "lien for medical payment benefits" paid by GEICO and instructed him not to execute any general releases which did not reserve its right to subrogation. By letter dated October 22, 2007, plaintiff advised GEICO that Rhode Island law did not seem to allow medical payment offsets that seek to reduce the coverage available under UIM benefits, stated this assertion of a subrogation lien was potentially an act of bad faith and demanded that GEICO withdraw any such third party lien in writing. Plaintiff never received a response to this letter.

On Oct. 17, 2007, GEICO demanded x-ray films from an alleged previous injury sustained by plaintiff on July 14, 2006, despite the fact that no x-ray films existed and that GEICO had no probable cause to believe that they existed.

GEICO has failed to acknowledge and act with reasonable promptness upon pertinent communications with respect to claims arising under the UIM policy. GEICO has engaged in a continuous pattern of delay by requiring duplication of medical records and has not once ever provided plaintiff with any reasonable and accurate explanation for its refusal to consider and pay UIM benefits even though Plaintiff has complied with all conditions precedent to commencing this action. This is tantamount to a complete refusal to negotiate. This position was taken long after the Rhode Island Supreme Court indicated in Skaling v. Aetna, 799 A.2d 997 (RI 2002) (hereafter "*Skaling*") that it is the policy of the State of Rhode Island to encourage settlement of controversies in lieu of litigation and that an insurance company is under an equivalent duty to participate in such negotiations. The defendant has not responded to the settlement demands that have been made by the plaintiff and has not offered a single penny to this very day to try to settle or resolve George's claims. By failing to enter into any negotiations whatsoever, the defendant has failed to adhere to the admonitions of *Skaling* or the basic concept of good faith and fair dealing inherent in all contracts. This has forced George to seek relief and he has selected this Court as an appropriate forum to do so, based upon the diverse citizenship of the parties and requisite amount in controversy. Finally, it is telling that GEICO sought a medical examination of Robert only after this case was filed and after the tortfeasors settled the underlying action. It had the right under the policy to have an examination of this type at any time after Robert submitted his claim. Failing to do so until after this case was filed is a further

example of its failure to investigate the claim and negotiate in good faith, both of which are continuing duties.

## ARGUMENT

GEICO is correct that Rule 42(b) of the Federal Rules of Civil Procedure ("F.R.C.P.") grants this Court discretion to order separate trials to avoid prejudice or to expedite and economize the litigation procedure. GEICO does not, however, mention Rule 26(b)(3)(5), relating to discovery and claims of privilege. Specifically, it fails to note that if a party seeks to withhold information by claiming that it is "privileged or subject to protection as trial-preparation material," the party making such claim must (a) expressly make the claim and describe the nature of the documents in a way that will enable other parties to assess the claim. The justification for severance urged by GEICO seems to be outdated and superseded state procedure that is not binding upon this Court. Defendant cites the matters of Bartlett v. Hancock Mut. Life Ins. Co., 538 A.2d 997 (RI 1988) and Corrente v. Fitchburg Mutual Fire Ins. Co., 557 A.2d 859 (RI 1989). The most significant holdings in those cases were that the Rhode Island Supreme Court in 1988 and 1989 felt that a plaintiff virtually had to obtain summary judgment and/or judgment as a matter of law following trial on his, her or its contract claim so as to be able to proceed with an extra-contractual "bad faith" action against an insurer. Given that "formidable" burden of proof, "bad faith" decisions were almost unheard of in this jurisdiction. Under those draconian conditions, severance of claims and the stay of all discovery was an inevitable result of such uneven "playing field."

*Skaling* abrogated that 1980s standard. It held that "certain claims of insurer bad faith are sustainable, notwithstanding the failure of plaintiff to establish entitlement to (judgment as a matter of law) on the contract claim." Furthermore, in situations when a claim is "fairly

debatable" the *Skaling* Court held that "liability may be imposed in situations in which the (insurer) intentionally or recklessly failed to properly investigate a claim or failed to subject its investigation to an appropriate cognitive evaluation and review, or, otherwise, acted in an oppressive and unreasonable manner. *Skaling* at 1006. The *Skaling* Court further held that an insurance company has a responsibility to assemble all the facts needed for a fair and comprehensive investigation before it refuses to pay a claim, and may not base a defense to bad faith on "later acquired information." Its actions must be "judged by what was before it at the time the decision was made." (Id at 1010-1011). Finally, the *Skaling* Court did note that in Rhode Island claims of insurer bad faith are generally "severed and tried separately from the breach of insurance contract claim," but added the caveat that in an appropriate case, a bifurcated trial may be a useful alternative approach (Id at 1010).

GEICO also relies on the cases of Aetna Cas. & Sur. Co. v. Nationwide Mut. Ins. Co., 735 F. Supp. 204, 208 (W.D.Pa. 1989); Schmidt v. California State Ass'n, 172 F.R.D. 182, 185 (D.Nev. 1989) and O'Malley v. United States Fidelity and Guaranty Co., 776 F.2d 494, 500-501 (5th Cir. 1985). All of these cases are from the 1980s, predate *Skaling* and many of the other decisions noted below. Indeed, the Schmidt case was rejected in the matter of Ring v. Commercial Union Ins. Co. 159 F.R.D. 653 (M.D. North Carolina 1995), and the O'Malley matter was rejected both as to discovery and bifurcation in the decision of Ferguson v. State Farm Insurance Company, 2007 WL 202127 (E.D.La. 2007). Plaintiff's research has developed additional, more recent cases supporting the proposition that there should be discovery (at the very least) and (under the circumstances of this case) no bifurcation at trial. These are enumerated as follows:

**A. Circuit Court of Appeal**

McLaughlin v. State Farm Mut. Auto Ins. Co. 30 F. 3d 861 (7th Cir. 1994), held that a trial court did not abuse its discretion by refusing to bifurcate the trial of a compensatory damages claim against the fire insurer from claims involving punitive damages. In McLaughlin, it was noted by District Judge Will (sitting by designation) on behalf of a unanimous court that:

> "I've handled at least a half a dozen cases against insurance companies such as this. Probably more. In all of those cases, the question of both actual and punitive damages has been submitted to the jury in one trial. I have not seen that there has been any prejudice either to the plaintiff or the defendant insurance company in those cases. At least one has resulted in a plaintiff's verdict for compensatory damages alone. And at least one has resulted in a plaintiff's verdict for actual and compensatory damages. So I believe, based on past experience, the jury will be able to follow any instructions and sort out the various issues." (30 F. 3d at 870-871).

**B. District Courts**

Windale, LLC v. Greenwich Insurance Co. 2003 WL 22089536 (N.D. Il. 2003) was a case that rejected the Aetna Casualty & Surety Co. case cited by the moving defendant (supra). This Court held that since the dispute is centered entirely on the amount of the loss (not the question of liability itself), and because both claims involve only post-claim negotiations or actions, the bad faith claim is "necessarily going to be tied to the contract claim." Since much of the evidence is relevant to both claims, the Court failed to see how bifurcation would avoid prejudice or promote efficiency. Additionally, the Court noted that "one of the chief complaints surrounding the bad faith claim is (the insurer's) alleged delay in settling the claim," and under these circumstances the Court saw "no reason to further delay the potential resolution of this claim by trying the two issues separately." Finally, the Court noted that if "matters arise that

could be prejudicial, we can deal with the specific issues or, for that matter, revisit this motion. 2003 WL 22089536 at note 2.

Zurich Ins. Co. v. Health Systems Integration, Inc., 1998 WL 211749 (E.D.Pa. 1998) involved an insurance company's declaratory judgment action met with counterclaims including one for "bad faith". Zurich argued that the "bad faith" counterclaims should be severed and all discovery as to such claims stayed pending a determination of the underlying coverage dispute. Pointing to Third Circuit precedent, the court noted that any party seeking bifurcation "has the burden of presenting evidence that a separate trial is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to the parties" (citation omitted). Bifurcation was said to be "an extraordinary remedy" that was "not to be routinely ordered" [citing Lis v. Robert Packer Hospital, 579 F.2d 819 (3d Cir. 1978)]. Zurich's argument for bifurcation being based upon the premise that it would prevail in the coverage aspect of the case merely assumed something that Zurich must prove and since Zurich "brought forward no creditable justification for either a severance or stay" its motions were denied. (1998 WL 211749 at note 3)

Williams v. Treasure Chest Casino, LLC., 1998 WL 42586 (E.D.La. 1998) was a case in which the Zurich Insurance Company filed a declaratory judgment action, asserting that claims brought against its insured (Treasure Chest Casino) were not covered by the relevant policy of insurance. In turn, Treasure Chest brought claims against Zurich for coverage and alleged "bad faith" on Zurich's part. Zurich sought bifurcation and a stay of discovery on the "bad faith" claims. The court agreed that disposition of Treasure Chest's "bad faith" claim was dependent upon the outcome of the coverage dispute. Nevertheless, it held that bifurcation would not further the interests of judicial efficiency, convenience and/or fairness. Indeed, "if Zurich's

declaratory judgment action is unsuccessful, the Court will have to endure two separate, and potentially repetitive discovery processes and trials". Furthermore, …

> "bifurcation and a stay of discovery would severely restrict the parties' ability to settle their dispute. With joint discovery, the parties will be more informed and therefore prepared to participate in settlement discussions. See *Cook v. United Servs. Auto Ass'n*, 169 F.R.D. 359, 361 (D.Nev. 1996). The court also notes that Treasure Chest would be severely prejudiced by the considerable delay that would result if the court ordered separate trials with separate discovery periods (additional citation omitted)." (1998 WL 42586, note 10)

Cook v. United Services Auto Ass'n, 169 F.R.D. 359 (D.Nev. 1996) involved claims by two insureds against their insurer, in essence for breach of contract, and breach of the implied covenant of good faith and fair dealing due to the insurers' alleged failure to reasonably investigate, assess and pay claims under the policy. The court first noted that bifurcation is a matter of federal procedural law and in diversity cases federal procedural law may be applied even though state law might require (or prohibit) bifurcated trials. Id. at 361, n. 1, citing Oulds v. Principal Mutual Life Insurance Co., 6 F.3d 1431, 1435 (10th Cir. 1993) and Sellers v. Baisier, 792 F.2d 90, 694 (7th Cir. 1986). Next, it held that bifurcation of the contract and "bad faith" claims for trial purposes was appropriate since the plaintiffs were required to prevail on their breach of contract claim as a prerequisite to presenting their "bad faith" contentions. On the other hand, the court refused to stay discovery relating to the so-called "extra-contractual" issues. In doing so, it noted that concurrent discovery would be more convenient to the parties, further the interests of judicial economy, better inform and prepare the parties for settlement negotiations and/or alternative dispute resolution, avoid discovery disputes, and expedite resolution of the entire matter by permitting the second trial, if needed, to commence immediately after the first trial. 169 F.R.D. at 362 (citations omitted). Left unsaid (but not necessary to the decision was the further fact that through motions *in limine* or other agreement,

any discovered evidence related solely to "bad faith" issues could readily be limited or excluded from the trial of the underlying action.

Schmidt v. California State Automobile Ass'n, 127 F.R.D.182 (D.Nev. 1989) was another case in which an insurer sought a stay of discovery and bifurcation of "bad faith" claims asserted by its insured. In a thoughtful decision the court agreed that severance was appropriate since without separate trials evidence pertaining to the insured's tort claims could prejudice the insurer in its defense of the contract claims before the court. On the other hand, it refused to foreclose discovery of most of the contents of the insurers claim file despite the company's argument that this related to the extra-contractual claims and was completely privileged. In doing so, the court rejected the contention the privilege and prejudice contentions raised by the insurer and noted that:

> (a) the attorney-client privilege was limited to communications with counsel at a time and under circumstances when the attorney was "acting in the role of attorney", but this does not mean that all attorney correspondence constitutes confidential communications in the nature of legal advice;
>
> (b) the "entire claims file" cannot be withheld on the basis of the work-product doctrine "because not all materials contained within the claims file is allowable work-product prepared in anticipation of litigation";
>
> (c) The "majority of cases that have dealt with the issue of whether investigative materials prepared by insurance claims adjusters is work-product prepared in anticipation of litigation have held that since insurance companies have a routine duty to investigate accidents, such materials are not prepared in anticipation of litigation

but are prepared in the ordinary course of business absent unique circumstances showing the contrary" (numerous citations omitted);

(d) It was not until the plaintiff's complaint was filed that "the possibility of litigation was sufficiently choate to bring materials created by the defendant (insurer) within the purview of Rule 26(b)(3)"; and

(e) The Rhode Island decision in Bartlett v. John Hancock Mutual Life Ins. Co., 538 A.2d 997 (R.I. 1988) was not applicable to material that was not privileged in the first instance. (127 F.R.D. at 183-184)

**C. State Courts**

Christiansen v. Farmers Insurance Exchange, 116 P.2d 259, 523 Utah Adv. Rep. 12 (2005) was a state court action in which arbitration was ordered with respect to the insureds' contract claims against their insurer. In addition to their arbitration claims, the insureds asserted a litigation claim for breach of the implied covenant of good faith and fair dealing inherent in every contract. In response to Farmers' request that discovery be stayed until conclusion of the contract claim, the court noted that the insurer failed to demonstrate good cause for a protective order. It underscored its reasoning by pointing out that "claims of breach of express contract (the policy) and bad faith are premised on distinct duties that give rise to divergent and severable causes of action". In other words, whereas the breach of contract claim relies on a contract's express terms, a "claim for breach of the implied covenant of good faith and fair dealing, by contrast, is based on judicially recognized duties not found within the four corners of the contract … (and) these duties are not subject to alteration by the parties". 116 P.3d at 261-262 (emphasis added). The Christiansen court contended that this "covenant imposes upon the parties a specific duty to bargain or settle in good faith", reasoning that:

> "An insured who has suffered a loss and is pressed financially is at a marked disadvantage when bargaining with an insurer over payment for that loss. Failure to accept a proffered settlement, although less than fair, can lead to catastrophic consequences for an insured who, as a direct
>
> consequence of the loss, may be particularly vulnerable, both economically and emotionally. The emptation for an insurer to delay settlement while pressures build on the insured is great, especially if the insurer's exposure cannot exceed the policy limits." (116 P.23d at 262)

Weeks v. Progressive Insurance Company 2005 WL 1792115 (R.I. Super. June 23, 2005) was a case in which it was noted that *Skaling* has inferred that the former rule in *Correnti* concerning severance of bad faith claims may be abrogated. Therefore, a motion to sever was not yet ripe, and the Court reserved to itself the right to limit discovery as the matter proceeded. This seems to be the more modern approach being taken in the Superior Courts of Rhode Island following *Skaling*.

Hercules Inc. v. One Beacon America Ins. Co. 2004 WL 2240993 (Del. Super. September 7, 2004), was a matter in which the trial court refused to stay discovery on a bad faith claim but did agree to sever the trial of such claim from that of the underlying contract action.

**ADDENDUM**

GEICO raises hypothetical horribles in support of its motion for severance and a stay of discovery (see defendants' memorandum at pages 3-6). These hypothetical horribles include the "possibility" of testimony by plaintiff's attorney(s) (particularly former counsel) but this is nothing more than conjecture.

GEICO's attempt to bootstrap its argument with a pending case in which Chief Judge Lisi granted defendant's motion to sever and stay is flawed.[2] As noted in the numerous decisions

[2] Chief Judge Lisi's decision in Condor v. GEICO General Insurance Company, Summit Insurance Company and New London County Mutual Insurance Company, U.S.D.C.-R.I. C.A. File No.: 07-460ML (Document Number 33, Memorandum and Order Granting Defendant's Motion to Sever and Stay) was reached without oral argument and involved a different fact pattern than the instant case.

discussed above an insurance company is under a duty to investigate claims prior to instigation of litigation. That duty is not something involving "the anticipation of litigation." Indeed, GEICO did not amply investigate and refused to negotiate. It is also clear from the rambling assertions of the defendant that it has no true, articulate reason that should deny discovery except as to truly attorney-client privileged communications), and, perhaps, whatever has occurred subsequent to the initiation of litigation in this Court.

## CONCLUSION

For these reasons and such further matters as may appear during oral argument, plaintiff respectfully suggests that this is that "appropriate case" to which the *Skaling* Court alluded, and requests that defendant's motion be denied in each and every respect.

Robert George
by his attorney,

/s/ John B. Reilly

John B. Reilly, Esq. (#1811)
John Reilly & Associates
100 North Main Street, 4th Floor
Providence, Rhode Island 02903
Tel.: (401) 272-2800
Fax: (401) 272-2811

**CERTIFICATION**

It is hereby certified that on the 17th day of September, 2008, a true copy of the within was filed electronically and it is available for viewing and downloading from the ECF system. The following counsel of record will receive notice of the filing of this document electronically from the United States District Court for the District of Rhode Island:

Jeffrey P. Finan, Esq.
Finan & Grourke
24 Spring Street
Pawtucket, RI 02860

___/s/ John B. Reilly____